# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CFGI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N23C-03-032 MAA CCLD |
| | ) | |
| v. | ) | |
| | ) | |
| COMMON C HOLDINGS LP (d/b/a | ) | |
| COMMON CITIZEN) and | ) | |
| COMMON C GP LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: October 23, 2023
Decided: January 29, 2024

*Common C Holdings LP's Motion to Dismiss:*
**GRANTED in part, DENIED in part.**

*Common C GP LLC's Motion to Dismiss:*
**DEFERRED pending jurisdictional discovery.**

*CFGI's Motion to Dismiss Defendant*
*Common C Holdings LP Counterclaim:*
**GRANTED, with leave to amend (in part).**

## MEMORANDUM OPINION

John P. DiTomo, Esquire, (Argued) and Alexandra M. Cumings, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, Attorneys for Plaintiff.

R. Bruce McNew, Esquire, (Argued), R. Grant Dick IV, Esquire, and Andrew A. Ralli, Esquire, of COOCH AND TAYLOR P.A., Wilmington, Delaware, Attorneys for Defendants.

**Adams, J.**

1

# I.  INTRODUCTION

This is a contract dispute between Plaintiff, CFGI, LLC, and Defendants Common C Holdings LP and Common C GP LLC, wherein CFGI performed accounting and financial services and has not yet received full payment. CFGI asserts that Defendants have, among other claims, breached the contract and owe unpaid invoices. Defendant Common C Holdings LP alleges in its Counterclaim that CFGI failed to perform properly under the contract and therefore CFGI's invoices are inflated and incorrect. Defendant Common C GP LLC maintains that it was not a party to the contract and consequently should be dismissed from this action for lack of personal jurisdiction.

CFGI alleges five counts against Defendants and Defendant Common C Holdings LP alleges four counts in its Counterclaim against CFGI. This is the Court's decision on Common C Holdings LP's Motion to Dismiss CFGI's First Amended Complaint, Common C GP LLC's Motion to Dismiss CFGI's First Amended Complaint, and CFGI's Motion to Dismiss Defendants' Counterclaim. For the reasons that follow, the motions are GRANTED in part, DENIED in part, and DEFERRED in part.

## II. FACTS[1]

### A. THE PARTIES

Plaintiff CFGI, LLC ("CFGI") is a financial consulting and advisory firm.[2] Defendants are Common C Holdings LP ("Common C Holdings") (d/b/a Common Citizen) ("Common Citizen") and Common C GP LLC ("Common C GP"), both of which have a principal place of business at 11300 17 Mile Road, Marshall, Michigan.[3] Common Citizen produces, distributes, and sells medical and recreational cannabis.[4]

### B. THE AGREEMENT

On approximately April 18, 2022, CFGI and Common Citizen entered into a contract (the "Agreement") wherein CFGI agreed to provide consulting services to Common Citizen.[5] Joseph Jarvis ("Jarvis"), Chief Operating Officer of Common Citizen, executed the Agreement as Common Citizen's authorized representative.[6] Jarvis is also manager and authorized representative of Common C GP.[7] The

---

[1] The facts are drawn from the Amended Complaint and the exhibits attached thereto, which includes the Agreement (Ex. A), the Amendment (Ex. B), and the Account Statement (Ex. C). When the Court considers CFGI's Motion to Dismiss Common C Holdings LP's Counterclaim, the Court also draws facts from the Counterclaim and Answer.

[2] Am. Compl. ¶ 1.

[3] *Id.* ¶¶ 2–3. The Amended Complaint lumps both Common C Holdings and Common C GP together for pleading purposes. This Court has attempted to distinguish the entities where possible.

[4] *Id.* ¶ 4.

[5] *Id.* ¶ 7. The Court notes that CFGI signed the Agreement on 3/28/22; Common Citizen, by Joseph Jarvis, signed on 4/19/22. The Agreement is dated 4/18/22. *Id.* Ex. A.

[6] Am. Compl. ¶ 8.

[7] *Id.* ¶ 9.

Agreement lists the entities as CFGI and Common Citizen, with no indication of which entity or entities "Common Citizen" represents.[8] CFGI asserts that Common C GP is a party to the Agreement.[9] Defendants deny that Common C GP is bound by the Agreement or any other obligations related to this suit because it did not sign the Agreement.[10]

The Agreement obligated CFGI to "assist the Company with financial, accounting, and tax consulting services—including technical accounting, interim management, business transformation, risk management, transaction advisory, robotic process automation, and valuation services—as requested by Company management."[11] The Agreement required CFGI's fees to consist of hourly rates, "administrative and out-of-pocket expenses [] billed at 5% of service fees," and travel expenses.[12] CFGI provided monthly invoices to Common Citizen, and Common Citizen owed payment within fifteen days of being invoiced.[13]

C.  INCREASING INVOICES AND COMMON CITIZEN'S FAILURE TO PAY

By June 2022, "the scope of work that Common Citizen required CFGI to perform had begun to exceed the parties' expectations at the time of the

---

[8] *Id.* ¶ 10; Agreement at 1.
[9] Am. Compl. ¶ 29.
[10] *E.g.*, Answer ¶¶ 9–10.
[11] Agreement at 1.
[12] *Id.* at 2.
[13] *Id.*

[Agreement's] execution."[14] CFGI informed Common Citizen that May 2022's invoice would likely exceed budgetary expectations and Common Citizen replied "acknowledging that the scope of work had increased dramatically and noting that the invoice did not come as a surprise."[15] One cause of the workload increase was that CFGI had to remediate accounting and financial errors Common Citizen made prior to the Agreement.[16]

CFGI attempted to assist Common Citizen with hiring accounting and financial employees as a way to reduce CFGI's workload and invoices.[17] Common Citizen, however, did not hire enough new employees.[18] CFGI proposed "several methods" for reducing Common Citizen's invoices and "endeavored to collaborate with Common Citizen as to solutions."[19]

D.    THE AMENDMENT

By September 2022, Common Citizen had failed to pay several monthly payments.[20] On September 16, 2022, CFGI and Common Citizen amended the Agreement "for the purpose restructuring [sic] Common Citizen's payments to CFGI" (the "Amendment").[21] Common C Holdings disputes that the Amendment is

---

[14] Am. Compl. ¶ 14.
[15] *Id.* ¶ 16.
[16] *Id.* ¶ 17.
[17] *Id.* ¶¶ 18–19.
[18] *Id.* ¶ 20.
[19] *Id.* ¶¶ 21, 25.
[20] *Id.* ¶ 23.
[21] *Id.* ¶ 26; Ex. B.

a binding amendment to their Agreement.[22]  CFGI executed the Amendment, in part, because Common Citizen represented that it was "on the verge of receiving a capital investment that would improve its ability to make payments."[23]  Jarvis edited a draft of the Amendment to account for the expected timing of the capital investment.[24]  In exchange for entering into the Amendment, CFGI "forewent pursuing its rights under the Contract," including by choosing not to discontinue performance.[25]

The Amendment was signed by CFGI and Common C Holdings, with Jarvis signing as Manager for Common C Holdings.[26]  The Amendment was the first time CFGI had transacted with Common C Holdings; prior correspondence only included the name "Common Citizen."[27]  CFGI alleges that by bifurcating Common C Holdings from Common C GP for the first time in the Amendment, "Common Citizen intended to obscure the identity of the party or parties to be bound by the Contract and Amendment."[28]

The Amendment noted that Common Citizen owed CFGI $2,156,920 and would make bi-weekly payments of $50,000 until the balance was paid in full.[29]  If Common Citizen received financing in any amount up to $15,000,000, it would

---

[22] Answer at ¶¶ 26–27.
[23] Am. Compl. ¶ 31.
[24] *Id.* ¶ 32.
[25] *Id.* ¶ 33.
[26] Amendment at 3.
[27] Am. Compl. ¶ 28.
[28] *Id.* ¶ 30.
[29] Amendment at 1.

"immediately pay one-half of the Outstanding Balance to CFGI with the remaining Outstanding Balance to be paid to CFGI on the earlier of 30 days of Company's receipt of such funding and December 30, 2022."[30]

## E.    COMMON CITIZEN'S CONTINUED FAILURE TO PAY

In October 2022, Common Citizen requested supporting documentation for CFGI's invoices and budgets, to which CFGI complied.[31]   In November 2022, Common Citizen still had not paid, so CFGI submitted several inquiries to Common Citizen and received delayed responses.[32]  In December 2022, Common Citizen and CFGI discussed another possible payment plan.[33]

CFGI alleges in the Complaint, on information and belief, that Common Citizen did receive additional financing in excess of $15 million.[34]  Common Citizen paid $485,700 of the $492,804.45 due for May 2022 and $400,000 of the $793,829.93 due for June 2022.[35]  Common Citizen has not made any payments for the invoices from July through December 2022.[36]  Despite CFGI allegedly fully performing pursuant to the Agreement, Common Citizen has not paid $2,160,033.50, plus interest.[37]

---

[30] *Id.*
[31] Am. Compl. ¶¶ 35–36.
[32] *Id.* ¶ 37.
[33] *Id.* ¶ 38.
[34] *Id.* ¶ 39.
[35] *Id.* ¶ 40.
[36] *Id.* ¶ 41.
[37] *Id.* ¶¶ 42–43; Ex. C.

7

## F.    COMMON CITIZEN'S DISPUTE OF THE INVOICES

The Agreement obligated CFGI to perform in a professional manner and in accord with the applicable professional standard of care.[38]  Prior to payment, CFGI was required to provide, if requested, "sufficient detail and support" to show that the billed work was "performed in a proper professional manner."[39]  Common C Holdings, in its Counterclaim, alleges that  CFGI "had no right to payment for work that was unnecessary, duplicative, unproductive, inefficient, faulty, or of no value" nor "work not authorized, work not performed in a professional manner, inefficiencies in its professional staffing and work assignments, non-productive work, or overbilling by its employees."[40]  Common C Holdings requested CFGI to complete basic accounting work, consisting of "tak[ing] its general ledger and [] prepar[ing] a balance sheet and income statement as well as acquisition accounting, tax assistance (sales and use tax filings), and proper[] maintenance of the accounting system."[41]

Common C Holdings asserts that CFGI "over staffed this work and under managed its professionals."[42]  As evidence of incorrect billing, Common C Holdings detailed that as many as 45 different employees billed over 6,400 hours in only 4

---

[38] Countercl. ¶ 6.
[39] Id. ¶ 7.
[40] Id.
[41] Id. ¶ 9.
[42] Id. ¶ 10.

8

months, some invoices listed the same employee twice, and some bills had no hours identified or failed to identify the tasks being performed.[43] CFGI refused to explain or back up these invoices when asked by Common C Holdings.[44] After the parties' relationship terminated, Common C Holdings' employees checked CFGI's work and discovered many errors, indicating that CFGI's work had "not been performed in a proper professional manner."[45] When Common C Holdings disputed the invoices and made only partial payments, CFGI "improperly withheld information and work product it knew were time critical" in order to extract the Amendment.[46]

## III. PROCEDURAL HISTORY

On March 6, 2023, CFGI filed a Complaint alleging three Counts. On June 13, 2023, CFGI filed an Amended Complaint alleging five counts:

- Count I: Breach of Contract;[47]

- Count II: Unjust Enrichment;[48]

- Count III: Fraud;[49]

- Count IV: Promissory Estoppel;[50]

---

[43] *Id.*
[44] *Id.*
[45] *Id.* ¶ 11.
[46] *Id.* ¶ 13.
[47] Am. Compl. ¶¶ 45–50.
[48] *Id.* ¶¶ 51–57.
[49] *Id.* ¶¶ 58–64.
[50] *Id.* ¶¶ 65–69.

9

- Count V: Award of Costs and Fees under the Contract, as Amended.[51]

On May 5, 2023, Common C Holdings filed its Counterclaim[52] alleging five counts:

- Count I: Breach of Contract;[53]

- Count II: Breach of Contract Implied Covenant of Good Faith and Fair Dealing;[54]

- Count III: Negligence;[55]

- Count IV: Contractual Attorney's Fees;[56]

- Count V: Fraud.[57]

On June 12, 2023, CFGI filed a Motion to Dismiss Common C Holdings' Counterclaim. On July 12, 2023, Common C Holdings filed an Answer, Affirmative Defenses, and a Motion to Dismiss CFGI's First Amended Complaint. Also on July 12, 2023, Common C GP filed a Motion to Dismiss CFGI's First Amended Complaint.

---

[51] *Id.* ¶¶ 70–74.
[52] The Counterclaim was filed with the original Answer. This is the operative pleading for the Counterclaim.
[53] Countercl. ¶¶ 16–17.
[54] *Id.* ¶¶ 18–19.
[55] *Id.* ¶¶ 20–22.
[56] *Id.* ¶¶ 23–25.
[57] *Id.* ¶¶ 26–30. On July 21, 2023, the Court granted a stipulated dismissal of Common C Holdings' Count V for Fraud.

Briefing concluded on August 28, 2023. The Court held oral argument on October 23, 2023 and granted Common C Holdings' Motion to Dismiss Count III for Fraud on the record. The Court took all other issues under advisement.

The issues presently before the Court on the three Motions to Dismiss are as follows:

- Defendant Common C Holdings' Motion to Dismiss:

  o Count I for lack of consideration;

  o Count II for failure to state a claim; and

  o Count IV for (1) failure to state a claim and (2) for lack of consideration;

- Defendant Common C GP's Motion to Dismiss for lack of personal jurisdiction; and

- Plaintiff CFGI's Motion to Dismiss the Counterclaim:

  o Count II as duplicative; and

  o Count III for (1) lack of subject matter jurisdiction, (2) failure to plead with particularity, and (3) as barred by the economic loss doctrine.

## IV. STANDARD OF REVIEW

When deciding a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are 'well-pleaded' if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate

11

unless the [non-moving party] would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[58] The Court does not need to accept merely conclusory allegations "without specific supporting factual allegations."[59] The court may only consider the complaint and extrinsic documents incorporated into the complaint by reference.[60] When analyzing a motion to dismiss a counterclaim, the court considers only the answer and its incorporated documents.[61]

## V.    ANALYSIS

### A.    DEFENDANT COMMON C HOLDINGS' MOTION TO DISMISS CFGI'S AMENDED COMPLAINT

#### 1)    Count I is Dismissed as it Pertains to the Amendment for Lack of Consideration.

To prove a valid, enforceable contract, a party must prove three elements: "(1) intent of the parties to be bound, (2) sufficiently definite terms, and (3) consideration."[62] Consideration is the "benefit of a promisor or a detriment to a promise [sic] pursuant to the promisor's request."[63] Consideration is valid when a

---

[58] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (internal quotations omitted).
[59] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del. 1995).
[60] *Furman v. Del. Dept. of Transp.*, 30 A.3d 771, 774 (Del. 2011) (citing *Vanderbilt Income & Growth Assocs. v. Arvida/JMB Managers*, 691 A.2d 609, 613 (Del. 1996)).
[61] *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *3 (Del. Super. Aug. 7, 2019) (citing *Otto Candies, LLC v. KPMG, LLP*, 2018 WL 1960344, at *3 (Del. Super. Apr. 25, 2018)).
[62] *Gallagher v. E.I. DuPont De Nemours & Co.*, 2010 WL 1854131, at *3 (Del. Super. Apr. 30, 2010) (internal citations omitted).
[63] *SARN Energy LLC v. Tatra Def. Vehicle a.s.*, 2018 WL 5733385, at *5 (Del. Super. Oct. 31, 2018) (internal quotations omitted).

promise is made to "forbear enforcement and to dismiss a lawsuit[,]" and "a forbearance to sue is valid consideration whether the suit would have been successful or not."[64]  However, under the pre-existing duty rule, "a contract cannot be based upon a duty which one is already legally obligated to perform."[65]  So, "a commitment to honor a pre-existing obligation works neither benefit nor detriment; therefore, '[a] promise to fulfill a pre-existing duty, such as a promise to pay a debt owed, cannot support a binding contract' because consideration for the promise is lacking."[66]  Consequently, contract modifications require new consideration to be enforceable.[67]

Here, Common C Holdings argues that the Amendment is not a valid modification for lack of new consideration because both parties were under a pre-existing legal duty pursuant to the Agreement.[68]  CFGI responds that valid consideration was in the form of "forbearance from pursuing legal action against Common Citizen for its repeated failure to make payments owed to CFGI under the Contract."[69]  CFGI also identifies Common Citizen's benefit as "the form of new

[64] *Se. Chester Cty. Refuse Auth. v. BFI Waste Servs. of Pa.*, 2015 WL 3528260, at *3 (Del. Super. June 1, 2015) (quoting *Hensel v. U.S. Elecs. Corp.*, 262 A.2d 648, 650 (Del. 1970)).

[65] *Kelly v. McKesson HBOC, Inc.*, 2002 WL 88939, at *8 n.18 (Del. Super. Jan. 17, 2002) (citing *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996)).

[66] *James J. Gory Mech. Contr., Inc. v. BPG Residential P'rs V, LLC*, 2011 WL 6935279, at *2 (Del. Ch. Dec. 30, 2011) (quoting *First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.*, 2005 WL 2173993, at *9 (Del. Ch. Sept. 6, 2005)).

[67] *See Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1233 (Del. Ch. 2000).

[68] Defs.' Opening Br. in Supp. of Mot. to Dismiss at 9–11.

[69] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 9.

payment terms in exchange for CFGI's forbearance of legal action."[70]  Common C

Holdings argues that such forbearance was illusory because CFGI reserved all rights

to sue.[71]

Both parties discuss *James J. Gory Mechanical Contracting, Inc. v. BPG*

*Residential Partners V, LLC*,[72] to support their respective position.  In that case, the

Court of Chancery found a superseding agreement was not supported by

consideration where the defendant had a pre-existing duty to pay a debt pursuant to

a previous contract.[73]  The defendant argued the plaintiff gave consideration by

accepting installment payments for the outstanding debt and implicitly promising

not to sue.[74]  The court, however, highlighted that defendant failed to indicate what

consideration the defendant gave.[75]  Since plaintiff had already fully performed on

the original contract, defendant already had to pay what was due on the original

contract.[76]

*BPG Residential Partners* is factually similar to the present issue.  Here, CFGI

also entered into an agreement to alter the payment structure for payments owed for

completed performance, and Common C Holdings failed to pay.  Like in *BPG*, while

---

[70] *Id.* at 10.
[71] Defs.' Reply Br. in Supp. of Mot. to Dismiss at 8–10.
[72] *BPG Residential P'rs V, LLC*, 2011 WL 6935279.
[73] *Id.* at *3.
[74] *Id.*
[75] *Id.*
[76] *Id.* at *2.

CFGI may have given consideration by opting not to sue on the contract, CFGI fails to establish Common C Holdings' consideration. *BPG* did not find the change to the payment structure was sufficient consideration because the amount owed remained the same. "The Defendant cannot use its pre-existing duty to pay the Plaintiff for its work as consideration for the Plaintiff's agreement to accept installment payments . . . rather than seek full and immediate payment, which payment is long past due."[77] While CFGI asserts that the agreement to an "acceleration" of payments created a new obligation, CFGI fails to identify how this changes the obligation of Common C Holdings wherein, even on accelerated terms, they were paying amounts already due, late, and unpaid on the Agreement.[78]

CFGI attempts to distinguish the holding in *BPG* from this case by noting that in *BPG*, there was discussion of a contingency in the amended agreement wherein the obligation would only be imposed if this contingency took place. This Court agrees with Common C Holdings' reading of *BPG*; the contingency was not considered by the court at all when deciding on the pre-existing duty rules' application. Therefore, this Court holds that Common C Holdings did not give

---

[77] *Id.*

[78] *See id.* at *3 ("[Defendant's] argument is focused on the wrong party. What is the consideration given by the Defendant in return for the Plaintiff's promise? The Plaintiff agreed to accept installment payments over a one-year period for an amount that was already due in full, and the Plaintiff also implicitly promised not to sue the Defendant provided that the Defendant kept up on the installment payments. The Defendant, on the other hand, *promised only to pay a debt which it already had a legal obligation to pay*. To be clear, that is a pre-existing duty and is not sufficient consideration to support a contract under Delaware law.") (emphasis in original).

consideration for the Amendment and the motion to dismiss the breach of contract claim for the Amendment is granted.

> **2)  Count II and Count IV of CFGI's Amended Complaint are Sufficiently Pled as Quasi-Contract Claims and May be Pursued in the Alternative at this Stage.**

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[79]  To sufficiently plead unjust enrichment, a plaintiff must plead: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[80] Unjust enrichment can be pled as an alternative to breach of contract, but if the relationship is "comprehensively governed by contract, the contract alone must provide the measure of the plaintiff's rights, and a claim for unjust enrichment will be denied."[81] When there is "doubt surrounding the enforceability or the existence of the contract" alternative pleading is permissible.[82]

---

[79] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).
[80] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 875 (Del. 2020) (quoting *Nemec*, 991 A.2d at 1130).
[81] *Lyons Ins. Agency, Inc. v. Kirtley*, 2019 WL 1244605, at *2 (Del. Super. Mar. 18, 2019) (citing *Nemec*, 991 A.2d at 1130).
[82] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *8 (Del. Super. June 27, 2016) (quoting *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005)).

To plead a claim for promissory estoppel, a plaintiff must show: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise."[83] Promissory estoppel exists to prevent injustice.[84] If there is a fully integrated, enforceable contract governing the issue, then promissory estoppel does not apply.[85] For example, in *Grunstein v. Silva*,[86] the court found promissory estoppel was not precluded by the existence of a contract because: (1) the contract did not directly involve the subsequently-litigating parties, and (2) "more importantly," the contract did not directly involve "the contours of the agreement at issue in the litigation."[87] Similarly, in *1 Oak Private Equity Venture Capital Limited v. Twitter, Inc.*,[88] the court held that the plaintiff cannot succeed on both a breach of contract and

---

[83] *Chrysler Corp. (Del.) v. Chaplake Hldgs., Ltd.*, 822 A.2d 1024, 1032 (Del. 2003) (internal quotations omitted).
[84] *Ramone v. Lang*, 2006 WL 905347, at *14 (Del. Ch. Apr. 3, 2006) (citing *Lord v. Souder*, 748 A.2d 393, 398–99 (Del. 2000)).
[85] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013) (internal citations omitted).
[86] *Grunstein v. Silva*, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009).
[87] *Id.* at *8.
[88] *1 Oak Priv. Equity Venture Cap. Ltd. v. Twitter, Inc.*, 2015 WL 7776758 (Del. Super. Nov. 20, 2015).

promissory estoppel claim, but allowed both to proceed past the motion to dismiss stage as alternative theories of liability.[89]

Common C Holdings argues that the Agreement entirely governs the parties' relationship, and therefore, unjust enrichment and promissory estoppel cannot be pled in the alternative.[90] CFGI asserts that despite the Agreement, the dispute about the enforceability of the Amendment allows CFGI to proceed in the alternative on both quasi-contract claims to ensure some avenue for recovery.[91] Common C Holdings responds that because the Agreement has not been challenged, the Agreement itself provides sufficient recovery.[92]

The parties do not dispute that the Agreement is a valid, enforceable contract.[93] To the extent that CFGI performed services pursuant to the Agreement, up until the execution of the Amendment on September 16, 2022,[94] the Court finds the Agreement entirely covers the dispute. Because the Court held that there was no consideration for the Amendment, the services provided after September 16, 2022

---

[89] *Id.* at *12.
[90] Defs'. Opening Br. in Supp. of Mot. to Dismiss at 11–15.
[91] Pl.'s Answering Br. in Opp'n to Defs'. Mot. to Dismiss at 11–15. CFGI distinguishes its unjust enrichment claim from the promissory estoppel claim by noting the enrichment arises from CFGI's continued provision of services whereas the promissory estoppel claim arises from Common C Holdings' promise to make payments with intent to induce the continued services. *CFGI, LLC v. Common C Hldgs. LP*, C.A. No. N23C-03-032 MAA CCLD (Del. Super. Oct. 23, 2023) (Oral Argument); D.I. 42.
[92] Defs.' Reply Br. in Supp. of Mot. to Dismiss at 10–12.
[93] *See, e.g.*, Defs.' Reply Br. in Supp. of Mot. to Dismiss at 11 ("The validity of the Consulting Agreement as a binding agreement between the parties has not been challenged, only the issues of breach and damages.").
[94] Am. Compl. Ex. B.

may fall outside of the scope of the Agreement. Without the Amendment, CFGI asserts it would not have continued performing.[95] Therefore, the Court denies the Motion to Dismiss as to the promissory estoppel and unjust enrichment claims to the extent that any amount may be deemed due since the Amendment, but not covered by the Agreement, specifically $121,416,76.[96]

## B.  COMMON C GP'S MOTION TO DISMISS CFGI'S AMENDED COMPLAINT

Common C GP has moved, pursuant to Superior Court Civil Rule 12(b)(2), to dismiss for lack of personal jurisdiction. Once a defendant brings such a motion, the burden is on the plaintiff to show that there is proper jurisdiction over the challenging defendant.[97] Despite this burden, "[t]he facts necessary to demonstrate the existence of personal jurisdiction are often in the exclusive control of the defendant."[98]

The Court will analyze a motion to dismiss for lack of personal jurisdiction in two steps.[99] First, if the defendant is a non-resident, the Court must determine if Delaware's long arm statute, 10 Del. C. § 3104(c), is applicable.[100] Personal jurisdiction exists when the claims "arose from [the defendant's] activities in

---

[95] Am. Compl. ¶ 33.

[96] *Id.*  Ex. C (encompassing the invoices since September 2022, including: SIN044107 ($34,200.00), SIN046351 ($24,080.26), SIN045848 ($45,100.13), and SIN046666 ($18,036.37)).

[97] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 (Del. 2005) (internal citations omitted).

[98] *Harris v. Harris*, 289 A.3d 277, 296 (Del. Ch. 2023) (internal citations omitted).

[99] *Matthew v. Fläkt Wood Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012).

[100] *Id.*

Delaware[.]"[101]  Second, the defendant must have "sufficient 'minimum contacts with [Delaware] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice'" as is required by due process.[102]

A party can also waive personal jurisdiction by either express or implied consent.[103]  Consenting to a valid forum selection clause is an express waiver.[104]  If a court determines that a valid forum selection clause applies, the court need not analyze minimum contacts because the contractual language is sufficient.[105]

1) **The Court Will Defer Ruling on Common C GP's Motion to Dismiss Count I as it relates to the Agreement based on Personal Jurisdiction and Permit Limited Jurisdictional Discovery.**

The parties, in their briefing, focused on the Amendment and how it does (or does not) subject Common C GP to personal jurisdiction in this Court because of the forum selection clause contained in the Agreement.  The Court has dismissed Count I (Breach of Contract) as it pertains to the Amendment, and therefore the fact that Common C GP signed the Amendment as authorized representative for Common C Holdings cannot serve as a basis for jurisdiction under the Agreement.  The Court's

---

[101] *Cuppels v. Mountaire Corp.*, 2020 WL 3414848, at *4 (Del. Super. June 18, 2020) (internal citations omitted).

[102] *Matthew*, 56 A.3d at 1027 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[103] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 130 (Del. 2016).

[104] *BACO Hldgs., Inc. v. Arria Data2Text, Ltd.*, 2023 WL 2199871, at *2 (Del. Super. Feb. 24, 2023) (citing *Nat'l Indus. Grp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013)).

[105] *Id.* (quoting *ActiGraph Hldgs., LLC v. Cyntech, Inc.*, 2023 WL 1989141, at *1 (Del. Ch. Feb. 14, 2023)).

analysis, therefore, will focus on whether Common C GP can be subject to the forum selection clause in the Agreement, even though it is not a signatory to the Agreement.

Non-signatories to a contract subject to forum selection can also be bound by the forum selection clause if three questions are answered affirmatively: "(1) whether the forum selection clause is valid; (2) whether the [defendants] are either parties, third-party beneficiaries, or closely related to the [contract]; and (3) whether the present claim arises from their standing relating to the [contract]" (the "*Hadley* elements").[106]  Regarding the first element, "forum selection clauses are presumptively valid and should be specifically enforced unless the resisting party clearly shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud and overreaching."[107]

As to the second element, "[f]orum selection clauses bind non[-]signatories that are closely related to the contractual relation or that should have foreseen governance by the clause."[108]  Foreseeability is "by virtue of the relationship

---

[106] *Hadley v. Shaffer*, 2003 WL 21960406, at *4 (D. Del. Aug. 12, 2003). *See, e.g.*, *Aviation W. Charters, LLC v. Freer*, 2015 WL 5138285, at *4 (Del. Super. July 2, 2015) (applying the three elements); *Florida Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1090 (Del. Ch. 2021) (same).

[107] *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) (internal quotations omitted).

[108] *Hadley*, 2003 WL 21960406, at *6 (quoting *Jordan v. SEI Corp.*, 1996 WL 296540, at *6 (E.D. Pa. June 4, 1996)). *See also Qlarant, Inc. v. IP Commercialization Labs, LLC*, 2022 WL 2527278, at *6 (Del. Super. July 6, 2022) ("The closely-related test is an expanded form of equitable estoppel where either the party receives a direct benefit from the agreement or it was foreseeable that the party would be bound by the agreement.").

between the signatory and the party sought to be bound."[109] "Under principles of estoppel, a forum selection provision can bind the non-signatory if (i) the non-signatory accepted a direct benefit from the agreement or (ii) the non-signatory had a close relationship to the agreement, a signatory to the agreement controlled the non-signatory, and the circumstances establish that the signatory agreed to the forum selection provision on behalf of its controlled affiliate."[110] The direct benefit can arise either at the time of contracting or after the contract was executed.[111] The benefit can be either pecuniary or nonpecuniary, but it cannot be indirect; "contemplation" of a benefit such as one arising from a separate agreement with a signatory is insufficient.[112] "The doctrine of equitable estoppel prevents the non-signatory from accepting the benefits of the agreement without also accepting its burdens, including the forum selection provision."[113]

The entities' principal place of businesses are at same address, but Common C Holdings is incorporated in Delaware, whereas Common C GP is incorporated in Michigan.[114] Jarvis is an employee of both entities—he serves as the Chief

---

[109] *Freer*, 2015 WL 5138285, at *4–5 (finding that the second factor was not met when plaintiff conceded they had no facts to allege any direct benefit and plaintiff did not allege that the defendant "solicited [plaintiff's] involvement in the acquisition, nor that [they] managed the negotiation, drafting or execution of the transaction").

[110] *Flotek*, 262 A.3d at 1090.

[111] *Id.* at 1091 (internal citations omitted).

[112] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *4 (Del. Ch. Sept. 18, 2019) (outlining multiple cases that analyze the direct benefit element).

[113] *Flotek*, 262 A.3d at 1074.

[114] Am. Compl. ¶¶ 2–3.

Operating Officer for Common C Holdings, and as a manager of Common C GP.[115] The Agreement was signed by CFGI and Jarvis, identified as COO, as the representative for "Common Citizen."[116] Nowhere in the Agreement, however, is Common C GP mentioned by name. Common Citizen is identified in the Agreement, and thereafter, referred to as "the Company" throughout. CFGI interprets this Agreement to be between CFGI and Common Citizen without "specify[ing] which business entity purporting to do business simply as 'Common Citizen'—whether a parent, subsidiary, or otherwise—is to be bound."[117]

The Amended Complaint's artful pleading does not distinguish between Common C Holdings and Common C GP. Instead, the Amended Complaint refers to both entities together as "Common Citizen"[118] and alleges that "in respect of the Contract and Amendment there is no meaningful distinction" between Common C Holdings and Common C GP.[119] Curiously, however, when defining Common C Holdings, the Amended Complaint alleges that Common C Holdings "d/b/a Common Citizen."[120]

The first and third *Hadley* elements are not in dispute—the parties agree the Agreement's forum selection clause is valid and the present claim arises from the

---

[115] *Id.* ¶¶ 8–9.
[116] Agreement at 5.
[117] Am. Compl. ¶ 10.
[118] *Id.*, preamble.
[119] *Id.* ¶ 29.
[120] *Id.* ¶ 2.

parties' standing as a result of the Agreement. Therefore, the question remains as to whether Common C GP is a third-party beneficiary or closely related to the Agreement. To be "closely related," CFGI must be able to show that Common C GP either received a direct benefit from the Agreement or it was foreseeable that Common C GP would be bound by the Agreement.[121]

The parties focused their briefing and oral argument on whether Common C GP was subject to jurisdiction in Delaware due to the fact that Jarvis, who works for both entities, signed the Amendment for Common C GP on behalf of Common C Holdings. Nonetheless, the Court finds that CFGI has also alleged a non-frivolous nexus to Delaware based on the "closely related" or "foreseeability" aspect of the *Hadley* elements. The Court, therefore, will permit limited jurisdictional discovery on this issue to see if CFGI is able to meet the second *Hadley* element.[122] The Court will defer ruling on Common C GP's Motion to Dismiss Count I as it relates to the Agreement until such discovery is complete.

---

[121] *See Baker v. Impact Hldg., Inc.*, 2010 WL 1931032, at *4 (Del. Ch. May 13, 2010).
[122] *See Reid v. Siniscalchi*, 2011 WL 378795, at *11 (Del. Ch. Jan. 31, 2011) ("The Court generally may not preclude jurisdictional discovery where the plaintiff asserts any non-frivolous basis for jurisdiction over the defendant in light of the factual allegations in the complaint.") (internal citations omitted).

**2) The Court Will Permit Jurisdictional Discovery as to Whether Common C GP is Subject to Jurisdiction in Delaware for the Quasi-Contract Claims.**

The parties did not brief the issues of whether, if Count I as it relates to the Amendment was dismissed, the Court would have jurisdiction over Common C GP. The Court, therefore, will also permit jurisdictional discovery as to Common C GP as it relates to CFGI's unjust enrichment and promissory estoppel claims, as they have been limited by the Court. The Court will defer ruling on Common C GP's Motion to Dismiss Counts II and IV until such discovery is complete.[123]

## C. CFGI'S MOTION TO DISMISS THE COUNTERCLAIM

### 1) Counterclaim Count II is Dismissed as Duplicative.

"The implied covenant of good faith and fair dealing inheres in every contract and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[124] The implied covenant "only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes

---

[123] The Court notes that Count V (attorneys' fees) has not been challenged by Common C Holdings' motion to dismiss. If the Court determines there is personal jurisdiction over Common C GP with this analysis, Common C GP will also be subject to the remaining Count V as well.

[124] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)) (internal quotations omitted).

25

reflected in the express language of the contract."[125] If a contract expressly addresses a particular matter, "an implied covenant claim respecting that matter is duplicative and not viable."[126]

A court should look at "the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal."[127] Courts are also cautioned about implying contractual protections "when the contract easily could have been drafted to expressly provide for it."[128]

To sufficiently allege a breach of the implied covenant, the plaintiff must "allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[129] "Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully."[130] "The Court will resort to the implied covenant only when a contract is truly silent with respect

---

[125] *All. Data Sys. Corp. v. Blackstone Cap. P'rs V L.P.*, 963 A.2d 746, 770 (Del. Ch. 2009) (citing *All. Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1035 (Del. Ch. 2006)). *See also Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. Nov. 23, 2009) (citing *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992)) ("The implied covenant does not apply when 'the subject at issue is expressly covered by the contract.'").

[126] *Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) (citing *Narrowstep, Inc. v Onstream Media Corp.*, 2010 WL 5422405, at *12 (Del. Ch. Dec. 22, 2010)).

[127] *Nemec*, 991 A.2d at 1126 (citing *Rutledge*, 750 A.2d at 1234).

[128] *Squid Soap*, 984 A.2d at 146 (quoting *GC-Sun Hldgs.*, 910 A.2d at 1035).

[129] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (quoting *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).

[130] *Id.* (citing *Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*, 2006 WL 2521426, at *6 (Del. Ch. Aug. 25, 2006)).

to the contested issue. And then only when the Court finds that the parties' expectations on the issue were so fundamental that they clearly would not need to negotiate about nor memorialize them."[131]

CFGI argues the implied covenant is duplicative because "it merely replicates Common Citizen's breach of contract claim."[132] CFGI notes the Agreement already contains provisions dealing with both the challenged substance of the work performed and the billing practices.[133] Common C Holdings asserts that the silent provisions protected by the implied covenant include the requirement that work performed would be "professional" and that "the information provided via the invoices [should] adequately show a customer that the work was done according to contract."[134] CFGI argues that Common C Holdings is trying to include provisions in a contract they failed to bargain for at the contract's creation.[135]

The Court agrees with CFGI. The Agreement specifically outlines the work CFGI is to perform and how CFGI should bill Common C Holdings for it. Common C Holdings can argue that CFGI breached the Agreement by a failure to follow the terms as bargained for, but this Court is not prepared to imply or add a higher standard of performance than is specifically outlined in the Agreement. The Court

---

[131] *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *6 (Del. Super. Oct. 25, 2018) (citing *GC-Sun Hldgs.*, 910 A.2d at 1032–33).

[132] Pl.'s Opening Br. in Supp. of Mot. to Dismiss Def.'s Countercl. at 4.

[133] *Id.* at 4–6.

[134] Def.'s Answering Br. in Opp'n to Pl.'s Mot. to Dismiss Countercl. at 9–10.

[135] Pl.'s Reply Br. in Supp. of Mot. to Dismiss Countercl. at 4–5.

notes that these are sophisticated parties who were capable of adding additional required terms into the Agreement when formed.  Counterclaim II is dismissed.

2) **Counterclaim Count III is Dismissed with Leave to Amend.[136]**

To plead negligence, a plaintiff must allege: "(1) the defendant had a legal obligation—a duty—to protect the plaintiff from a risk of injury; (2) the defendant breached the duty toward the plaintiff; and (3) that breach proximately caused the plaintiff injury."[137]  Negligent misrepresentation requires the plaintiff to plead that: "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information."[138]  "An equitable fraud or negligent misrepresentation claim lies only if there is either: (i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only equity can afford."[139]  The Court of Chancery has exclusive jurisdiction over claims of

---

[136] The Court notes Plaintiff's additional challenges to Count III for lack of particularity and as barred by the economic loss doctrine, but declines to address these arguments substantively because Count III is dismissed on other grounds.

[137] *Roman Oil Co. v. Bibbs*, 2013 WL 1143630, at *5 (Del. Super. Mar. 14, 2013) (citing *Roberts v. Delmarva Power & Light Co.*, 2 A.3d 131, 136 (Del. Super. 2009)).

[138] *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 822 (Del. Ch. 2014) (citing *Corp. Prop. Assocs. 14 Inc. v. CHR Hldg. Corp.*, 2008 WL 963048, at *8 (Del. Ch. Apr. 10, 2008)).

[139] *Envo, Inc. v. Walters*, 2009 WL 5173807, at *6 (Del. Ch. Dec. 30, 2009) (citing *Wal-Mart Stores, Inc. v. AIG Ins. Co.*, 2006 WL 3742596, at *2 (Del. Ch. Dec. 12, 2006)).

negligent misrepresentation, with the exception of cases arising under the Consumer Fraud Act.[140]

In analyzing subject matter jurisdiction, "the Court must look beyond the 'labeling' of the claim and examine its substance to determine the true nature of the claim."[141] In *Van Lake v. Sorin CRM USA, Inc.*,[142] the court found, despite a negligent misrepresentation label, that plaintiff actually alleged a simple negligence claim. In *Van Lake*, the plaintiff alleged that the defendant had a duty to provide accurate information, the defendant breached its duty by negligently making misrepresentations, the plaintiff justifiably relied on the representations, and as the proximate result of the misrepresentations, plaintiff was damaged.[143] The elements for negligence were thus sufficiently pled.

*Atwell v. RHIS, Inc.*[144] is instructive in distinguishing the two claims. In *Atwell*, the court found negligence instead of negligent misrepresentation when the defendant failed to disclose the true condition of a home and the facts alleged negligence: "the duty (that a seller must disclose known defects), who breached it ([defendant]), the breaching act (failing to disclose the condition of the home), and

---

[140] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *11 (Del. Super. Feb. 15, 2013) (citing *Iacono v. Barici*, 2006 WL 3844208, at *5 (Del. Super. Dec. 29, 2006)).
[141] *Id.* (citing *Radius Servs., LLC v. Jack Corrozi Constr., Inc.*, 2009 WL 3273509, at *3 n.10 (Del. Super. Sept. 30, 2009) (refusing to dismiss a negligent misrepresentation claim for lack of subject matter jurisdiction merely because of the claim's title).
[142] 2013 WL 1087583.
[143] *Id.* at *12.
[144] *Atwell v. RHIS, Inc.*, 2006 WL 2686532 (Del. Super. Aug. 18, 2006).

the injured party (Plaintiffs)."[145]  As to another count, the court found negligent misrepresentation because plaintiffs "expressly contend[ed] that there was a pecuniary duty to provide accurate information, that [defendant] failed to exercise reasonable care in obtaining and communicating false and inaccurate information to Plaintiffs and that Plaintiffs suffered injuries and damages as a result."[146]

During briefing and oral argument in this case, Common C Holdings argued that its negligence claim was for "professional malpractice."[147]  To plead a professional malpractice claim, the plaintiff must allege a breach of the standard of professional care owed.[148]  *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*[149] details what is required to successfully plead malpractice. The plaintiff there should have plead "that each of the defendant advisors was engaged by [plaintiff] to provide professional advice of a particular kind, specifying what the advisors did in those capacities, and identifying how what the advisors did fell short

[145] *Id.* at *1.
[146] *Id.  See also Radius Servs.*, 2009 WL 3273509, at *2 (distinguishing negligent misrepresentation from negligence based on if the defendants "knew" or only "should have known" that their representations were false: if defendant "knew," then common law fraud could be plead; if defendants merely "should have known," then negligent misrepresentation or equitable fraud is pled). *But see WyPie Invs., LLC v. Homschek*, 2018 WL 1581981, at *16–17 (Del. Super. Mar. 28, 2018) (dismissing complaint for lack of subject matter jurisdiction, and holding plaintiff pled a claim for negligent misrepresentation where plaintiff asserted that defendants "knew or should have known" that the statements were materially false, that plaintiff relied upon them, and they would be damaged as a result of the misrepresentation).
[147] *CFGI, LLC v. Common C Hldgs. LP*, C.A. No. N23C-03-032 MAA CCLD (Del. Super. Oct. 23, 2023) (Oral Argument); D.I. 42; Def.'s Answering Br. at 10–12.
[148] *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 216 (Del. Ch. Aug. 10, 2006).
[149] *Id.*

of applicable standards of care."[150]  Further, Delaware courts usually require professional malpractice claims to be supported by expert testimony.[151]  Expert testimony may not be required to show the standard of care when "the professional's mistake is so apparent that a layman, exercising his common sense, is perfectly competent to determine whether there was negligence."[152]

To support its claim for negligence, Common C Holdings points to paragraphs 6 through 11 and 21 of its Counterclaim.[153]  CFGI argues that the claim is for negligent misrepresentation because it challenges the information detailed in the

---

[150] *Id.* at 217.  *See also Shandler v. DLJ Merch. Banking, Inc.*, 2010 WL 2929654, at *17 (Del. Ch. July 26, 2010) (dismissing a professional malpractice claim because the plaintiff made "no claim about what the industry standards were, or what the [defendants] did that was below those standards.").

[151] *See Alston v. Hudson*, 700 A.2d 735 (Table), 1997 WL 560883, at *2 (Del. 1997) (citing *Weaver v. Lukoff*, 511 A.2d 1044 (Table), 1986 WL 17121, at *1 (Del. 1986)).

[152] *Weaver*, 511 A.2d 1044 (Table), 1986 WL 17121, at *1 (citing *Larrimore v. Homeopathic Hosp. Ass'n*, 181 A.2d 573, 577 (Del. 1962)).

[153] D.I. 42.  Paragraph 6 refers to the contractual obligation to perform in a professional manner, and to "provide its services in accord with the applicable professional standard of care."  Countercl. ¶ 6.  Paragraph 7 detailed invoicing procedures and clarified that CFGI "was not entitled to be compensated for work not authorized, work not performed in a professional manner, inefficiencies in its professional staffing and work assignments, non-productive work, or overbilling by its employees." *Id.* ¶ 7.  Paragraph 8 noted that CFGI was "required to see that its employees properly performed requested work without material errors and in an efficient manner and that its billings reflect only such work." *Id.* ¶ 8.  Paragraph 9 detailed the work CFGI was contracted to complete, noting that it was "basic accounting work." *Id.* ¶ 9.  Paragraph 10 detailed Common C Holdings' reasons for believing CFGI "over staffed this work and under managed its professionals" including unreasonably large billable hours, repeats of employees names on the invoices, and insufficient descriptions. *Id.* ¶ 10.  Paragraph 11 claims that Common C Holdings found "multiple errors" in CFGI's work and "that the work had not been performed in a proper professional manner." *Id.* ¶ 11.  Paragraph 21 noted that "CFGI was obligated by the applicable standard of care to perform and bill for its services in a reasonably prudent manner" and that CFGI breached its "professional duties under the applicable standards." *Id.* ¶ 21.

invoices provided to Common C Holdings and is therefore outside of the Court's subject matter jurisdiction.[154]

The Court finds that Common C Holdings has pled a claim for negligence, rather than negligent representation. Like in *Van Lake v. Sorin CRM USA, Inc.*, Common C Holdings alleged facts that pled duty, breach of a duty, causation, and the harm that CFGI allegedly caused. Common C Holdings does not plead that CFGI "knew or should have known" that the representations in the invoices were false, nor that the representation in the invoices is what caused the injury. Instead, Common C Holdings focuses on CFGI's work product itself as negligently performed, rather than the creation of the invoices as the negligent behavior. Nor has Common C GP pled that it "justifiably relied" on the misrepresentations in the invoice that would give rise to a negligence misrepresentation claim.

A question remains, however, as to whether Common C Holdings has pled a claim for professional negligence (i.e., malpractice).[155] CFGI correctly identifies that Common C Holdings failed to plead professional negligence because it failed to plead a professional standard of care.[156]

While expert testimony is usually required for professional negligence, if negligence is "so apparent that a layman, exercising his common sense, is perfectly

---

[154] Pl.'s Opening Br. in Supp. of Partial Mot. to Dismiss at 7–8.
[155] Def.'s Answering Br. in Opp'n to Pl.'s Mot. to Dismiss at 10.
[156] Pl.'s Reply Br. in Supp. of Partial Mot. to Dismiss at 6.

competent to determine whether there was negligence," expert testimony is not necessary.[157] As evidence, Common C Holdings refers to CFGI's invoice which contained "'disorganized, inefficient, and wasteful expenditures of time,' over-billing, fraudulent billing, and represented faulty work."[158] Despite Common C Holdings asserting that CFGI performed basic accounting work, this Court is not convinced that the errors and flaws alleged are such that the negligence would be clear to a lay person. Since expert testimony has not been provided to allege what the standard of care is for an accountant, as a professional negligence claim, the Court grants Common C Holdings leave to amend. Common C Holdings can amend its pleading to the extent, if it can, that CFGI's alleged insufficient performance is so deficient that it would be clear to a reasonable layperson.

## VI. CONCLUSION

As to Common C Holdings' Motion to Dismiss Plaintiff's claims, the Court: (1) grants the dismissal of Count I, breach of contract, as it pertains to the Amendment for lack of consideration; and (2) denies the motion as it pertains to both Count II, unjust enrichment, and Count IV, promissory estoppel.

As to Common C GP's Motion to Dismiss, the Court defers ruling at this time, pending jurisdictional discovery.

---

[157] *Weaver*, 511 A.2d 1044 (Table), 1986 WL 17121, at *1 (citing *Larrimore*, 181 A.2d at 577).
[158] Def.'s Answering Br. in Opp'n to Pl.'s Mot. to Dismiss at 11.

As to Plaintiff's Motion to Dismiss Common C Holdings LP's counterclaim, the Court: (1) grants the dismissal of Count II, breach of the implied covenant of good faith and fair dealing; and (2) dismisses with leave to amend Count III, negligence, for failure to provide an expert to explain the professional duty of care, but denies the motion to the extent it alleges lack of subject matter jurisdiction for a pleading of negligent misrepresentation.

**IT IS SO ORDERED.**

*/s/ Meghan A. Adams*

**Meghan A. Adams, Judge**